**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ERIC NORRELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AEROVIRONMENT, INC., WAHID NAWABI, KEVIN P. MCDONNELL, and MARY CLUM,<br><br>Defendants. | Case No. 1:26-cv-01429 (AJT) |

**MEMORANDUM OF LAW IN SUPPORT OF RAFFAELE PALMIGIANO'S**
**MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF HIS SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................................. ii

I. INTRODUCTION ................................................................................................................ 3

II. SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ....................... 4

III. ARGUMENT ...................................................................................................................... 9

    A. The PSLRA Standard for Appointing Lead Plaintiff ............................................... 9

    B. Mr. Palmigiano Is the "Most Adequate Plaintiff" under the Exchange Act ......... 10

        1. Mr. Palmigiano Has Satisfied the PSLRA's Procedural
            Requirements ................................................................................................ 10

    2. Mr. Palmigiano Has the Largest Financial Interest in the Relief Sought by
        the Class ....................................................................................................... 11

  C. Mr. Palmigiano Is Qualified Under Rule 23 ........................................................ 11

    1. Mr. Palmigiano's Claims Are Typical of the Claims of the Class ............................ 13

    2. Mr. Palmigiano Will Fairly and Adequately Represent the Class's Interests ............ 13

    3. This Court Should Approve Mr. Palmigiano's Choice of Counsel .......................... 14

IV. CONCLUSION .................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bousso v. Spire Glob., Inc.*,
   No. 1:24-cv-01458-MSN-WEF, 2024 WL 4873311 (E.D. Va. Nov. 21, 2024)............. 5, 11, 13

*Grad v. Ironnet, Inc.*,
   No. 1:22-cv-00449-RDA-JFA, 2022 WL 2789899 (E.D. Va. July 15, 2022)................... 11, 14

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ....................................................................... 4, 11, 12, 13

*Rice v. Genworth Fin. Inc.*,
   No. 17cv59, 2017 WL 3699859 (E.D. Va. Aug. 25, 2017) ................................................ 11, 14

*Switzenbaum v. Orbital Scis. Corp.*,
   187 F.R.D. 246 (E.D. Va. 1999) ............................................................................................. 12

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................................................ 3

15 U.S.C. § 78t(a) ............................................................................................................................ 3

15 U.S.C. § 78u-4 ................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Putative class member Raffaele Palmigiano ("Mr. Palmigiano"), by counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), respectfully moves this Court for an Order: (i) appointing Mr. Palmigiano as Lead Plaintiff in the above-captioned action (the "Action") under the PSLRA; (ii) approving Mr. Palmigiano' selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); (iii) approving The Office of Craig C. Reilly, Esq. to serve as Liaison Counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

## I.      INTRODUCTION

The Action is a securities class action brought pursuant to Sections 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against AeroVironment, Inc. ("AeroVironment" or the "Company"), Wahid Nawabi ("Nawabi"), the Company's President and Chief Executive Officer at all relevant times, Kevin McDonnell  ("McDonnell"), the Company's Chief Financial Officer ("CFO") at all relevant times, and Mary Clum ("Clum") who served as President of AeroVironment's Space, Cyber & Directed Energy business segment from October 2025 through the end of the Class Period (herein collectively referred to as the "Defendants"), for violation of the federal securities laws on behalf of all persons and entities who purchased or otherwise acquired AeroVironment securities between June 25, 2025 and March 10, 2026, both dates inclusive (the "Class Period"). Compl. ¶ 1.[1]

---

[1] "Compl., ¶ __" refers to paragraphs of the complaint filed in the Action. ECF No. 1. In addition to the Action, there is also a related securities class action lawsuit pending in the U.S. District Court for the District of Delaware captioned *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. AeroVironment, Inc., et. al*, 1:26-cv-00875-CFC (D. Del.) (filed July 17, 2026) (the "*City of Miami Beach* Action"). The Action and the *City of Miami Beach* Action involve similar claims and allegations, with overlapping defendants and class definitions.

Pursuant to the PSLRA, this Court must appoint the member of the Class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); *see In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 434 (E.D. Va. 2000). Mr. Palmigiano believes he should be appointed as Lead Plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. Mr. Palmigiano also respectfully requests that the Court approve Kaplan Fox as Lead Counsel and The Office of Craig C. Reilly, Esq. to serve as Liaison Counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.  SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

On May 26, 2026, the Action was filed, and, on May 28, 2026, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the Action was published to Class members on *PR Newswire* (the "Notice") advising purchasers of AeroVironment securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct. *See* Declaration of Craig C. Reilly in Support of the Motion of Raffaele Palmigiano for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("Reilly Decl."), dated July 27, 2026, Ex. A (Notice) attached thereto. The Notice further advised Class members of their right to move the Court to be appointed Lead Plaintiff by July 27, 2026. The notice in the *City of Miami Beach* Action similarly advised Class members of their right to move the Court to be appointed Lead Plaintiff by July 27, 2026. *See* Reilly Decl. Ex. B (*City of Miami Beach* Action Notice).[2]

---

As such, the Court should defer ruling on the motions for lead plaintiff appointment until venue is decided.

[2] The Class Period alleged in the *City of Miami Beach* Action is longer than the Class Period alleged in this Action (June 24, 2025 through March 10, 2026). For purposes of Mr. Palmigiano's

4

Accordingly, Mr. Palmigiano now moves this Court to be appointed as Lead Plaintiff.

As alleged in the Action, AeroVironment operates as a defense technology provider delivering integrated capabilities across air, land, sea, space, and cyber. Compl. ¶2. According to the Complaint, prior to the Class Period, AeroVironment announced that it had completed the acquisition of BlueHalo, LLC ("BlueHalo"), a defense technology firm specializing in advanced engineering products. *Id.* ¶3. BlueHalo had previously obtained a $1.4 billion contract to deliver BADGER phased array antenna systems to the U.S. Space Force's Satellite Communication Augmentation Resource ("SCAR") program. *Id.* ¶4. During the Class Period, Defendants consistently assured investors that the SCAR program would drive revenue growth for AeroVironment moving forward. *Id.* ¶7. Defendants stated that the SCAR program represented a "tremendous growth opportunity," that AeroVironment's work pursuant to the contract was "very much on track," that the customer was "asking for more [systems]," and that the Company stood "ready to build more." *Id.*

The Class Period starts on June 25, 2025. One day earlier, after the close of business, AeroVironment issued a press release announcing the Company's financial and operating results for the fiscal fourth quarter and year ended April 30, 2025. *Id.* ¶31. In the press release, the Company provided a projection for the year 2026 of "revenue of between $1.9 billion and $2.0 billion, non-GAAP adjusted EBITDA of between $300 million and $320 million, and non-GAAP earnings per diluted share… of between $2.80 and $3.00." *Id.*

---

loss analysis, he utilizes the longer class period. *See, e.g., Bousso v. Spire Glob., Inc.*, No. 1:24-cv-01458-MSN-WEF, 2024 WL 4873311, at *3 (E.D. Va. Nov. 21, 2024) (noting that it is the "'prevailing view is that when calculating the financial interest of potential plaintiffs, it is proper to look to the longest alleged class period among the cases to be consolidated.'") (internal citations omitted). After appointment, the Lead Plaintiff will reconcile different class periods and class definitions upon filing an amended complaint.

5

On September 9, 2025, the Company issued a press release announcing its financial results for the fiscal quarter ended August 2, 2025, reiterating its previous revenue guidance and raising its guidance on non-GAAP EPS to "between $3.60 and $3.70." *Id.* ¶32. On the same day the Company held a conference call to discuss the financial results for the quarter. On the call, Defendant Nawabi claimed the Company's BADGER phased array systems "will be [a] key growth driver[] for this segment in the future." *Id.* ¶33. Also on the call, Nawabi reiterated management's confidence in the announced guidance multiple times. *Id.* ¶¶34-35.

During the class period, management also appeared at a number of investor conferences and made similar alleged misrepresentations. *Id.* ¶¶36-38. On September 30, 2025, AeroVironment held its Investor Open House, during his remarks, Defendant Nawabi told investors that the Company's SCAR and phased array systems were "really key" to the Company and "a $1 billion franchise." *Id.* ¶36. Also during the Investor Open House, Defendant Clum touted AeroVironment's close communication with the U.S. Space Force as the Company's "entire team" was "shoulder-to-shoulder" with the agency, and represented both that the U.S. Space Force was "asking for more" products from AeroVironment and that the Company stood ready to "build more" in response. *Id.* ¶37. On December 3, 2025, Defendant Nawabi appeared on behalf of AeroVironment at Goldman Sachs' Industrial and Materials Conference, where he represented that SCAR and the Company's BADGER system would be "major contributors to growth," just three months before investors would learn that AeroVironment's work for SCAR was under review. *Id.* ¶38.

On December 9, 2025, AeroVironment filed its financial results for the second quarter of the 2026 fiscal year and held a conference call to discuss the same. *Id.* ¶39. During that call, Defendant Nawabi continued to represent that the SCAR program represented a "tremendous

growth opportunity," giving no indication that the program might be under review or that AeroVironment might mutually agree to a stop work order in the following month. *Id.* ¶39. On the same call, Defendant McDonnell touted a "significant" contract with the US Space Force for 2 BADGER systems for the US Space Force. *Id.* ¶40. Later during the same call, in response to an analyst's question concerning this contract, Defendant Nawabi represented that AeroVironment's work for the program was "very much on track," that AeroVironment was making progress "shifting now from development activity to delivering products," and conveyed Defendants' expectation that "the margins and revenue of that business" would "improve" both in the 2026 fiscal year and "beyond." *Id.* ¶41.

According to the Complaint, Defendants above described statements were false and/or misleading statements and/or failed to disclose that: (i) AeroVironment understated the likelihood that it would imminently face competition from other vendors for the work it performed in connection with the SCAR program and the U.S. Space Force's ongoing efforts to modernize; (ii) accordingly, Defendants overstated AeroVironment's business and financial prospects; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.* ¶43.

According to the complaint, the truth was partially revealed when, on January 20, 2026, AeroVironment filed with the SEC a current report on Form 8-K, announcing that the U.S. government issued a stop work order on the Company's agreement to deliver BADGER systems to the SCAR program, upon mutual agreement with the Company. *Id.* ¶44. Following the news, AeroVironment's stock fell $61.97 per share, or 15.77%, to close at $330.89 per share. *Id.* ¶45.

The truth was further revealed on March 2, 2026, when it was reported the US Space Force would be reopening the SCAR program to new suppliers, with the director of contracting at the

Space Rapid Capabilities Office stating the new acquisition strategy "will likely take the form of other companies building versions or variants of SCAR," departing from the U.S. Space Force's initial decision to award work to a single contractor. *Id.* ¶49. In the same article it was disclosed that the Space Force had been in contact with the senior acquisition executive "for a little while now." *Id.* On this news, AeroVironment's stock price fell $43.93 per share, or 17.42% to close at $208.32 per share. *Id.* ¶50.

On March 10, 2026, AeroVironment announced its financial results for the third quarter of fiscal year 2026 and held a conference call to discuss the same. *Id.* ¶54. The Company reported a third-quarter operating loss of $179.0 million. *Id.* These financial results reflected the impact of a $151.3 million goodwill impairment in the Company's space division after a stop work order tied to the Space Force's SCAR program. *Id.* AeroVironment also released updated revenue guidance for the 2026 fiscal year, announcing it expected $1.85 billion to $1.95 billion, lowered from its earlier guidance range of $1.95 billion to $2.0 billion. *Id.* Also on the call, Defendant McDonnell explicitly tied the SCAR stop work order and contract cancellation to the Company's financial results for the quarter and Defendants' decision to lower their guidance for the fiscal year. *Id.* ¶56. On this news, AeroVironment's stock price fell $13.84 per share, or 6.24%, to close at $207.73 per share. *Id.* ¶58.

As noted above, the *City of Miami Beach* Action extends the Class Period through June 18, 2026. According to the Complaint in the *City of Miami Beach* Action, on June 22, 2026, AeroVironment filed with the SEC a current report on Form 8-K, announcing that its financial statements filed in its prior quarterly report on March 11, 2026, "require restatement and should no longer be relied upon," because the goodwill impairment calculation was grossly understated. *City of Miami Beach* Action, ECF No. 1, ¶41. The report further explained that the impairment

8

charge had been understated by $89.4 million, bringing the total corrected goodwill impairment charge to $240.7 million, and attributed this to "an error in the calculation of the carrying value used in the goodwill impairment analysis of the Space reporting unit." *Id.* The Company explained that "the error and the related restatements were the result of a newly identified material weakness in the Company's internal control over financial reporting," and that "the disclosure controls and procedures as of January 31, 2026 were ineffective." *Id.* On this news, AeroVironment's stock price fell $18.28 per share, or 11%, to a closing price of $151.33 per share on June 22, 2026. *Id.*

## III.   ARGUMENT

### A.   The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-

4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

(aa)    has either filed the complaint or made a motion in response to a notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.    Mr. Palmigiano Is the "Most Adequate Plaintiff" under the Exchange Act

Mr. Palmigiano respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. In addition, Mr. Palmigiano has duly signed and filed a certification stating that he is willing to serve as the representative party on behalf of the Class. *See* Reilly Decl. Ex. C. Finally, Mr. Palmigiano has selected and retained counsel experienced in the prosecution of securities class actions to represent the Class. *See id.*, Ex. E (Kaplan Fox Firm Resume); http://www.ccreillylaw.com/attorney-profile/ (Craig C. Reilly, Esq. profile). Accordingly, Mr. Palmigiano satisfies the PSLRA's requirements and, therefore, should be appointed Lead Plaintiff.

### 1.    Mr. Palmigiano Has Satisfied the PSLRA's Procedural Requirements

The time period in which Class members may move to be appointed lead plaintiff in this case expires on July 27, 2026. *See* 15 U.S.C. § 78u-4(a)(3)(A); *see also* Reilly Decl. Exs. A and B. Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Mr. Palmigiano timely moved this Court to be appointed lead plaintiff on

behalf of all members of the Class.

### 2. Mr. Palmigiano Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA does not define "largest financial interest" or detail specifically how such a determination should be made, courts in this District tend to look to the movants' net losses after "ensur[ing] that each movant's loss is calculated by reference to a common settle-out price." *In re MicroStrategy*, 110 F. Supp. 2d at 434. *See also Bousso*, 2024 WL 4873311 at *4 (stating courts consider financial loss "to be the most significant" factor, however also consider "the number of shares purchased, number of net shares purchased, and net funds expended."); *Grad v. Ironnet, Inc.*, No. 1:22-cv-00449-RDA-JFA, 2022 WL 2789899 at *3 (E.D. Va. July 15, 2022) (finding movant with largest financial loss in matter is presumptively lead plaintiff.); *Rice v. Genworth Fin. Inc.*, No. 17cv59, 2017 WL 3699859 at *7 (E.D. Va. Aug. 25, 2017) (same). Here, Mr. Palmigiano suffered substantial losses of $31,005.71 under both FIFO and LIFO methodologies as a result of purchasing 591 total shares of AeroVironment common stock at artificially inflated prices during the Class Period with net expenditures of $174,912.05. *See* Reilly Decl., Exs. C and D. Mr. Palmigiano is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant. Therefore, Mr. Palmigiano believes he is presumptively entitled to appointment as the Lead Plaintiff.

### C. Mr. Palmigiano Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements

of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representatives. *See Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999) ("[T]he candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity to provide adequate representation for others."). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *In re MicroStrategy*, 110 F. Supp. 2d at 435 ("This inquiry need not be as 'searching as the one triggered by a motion for class certification,' because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified.") (*citing Switzenbaum*, 187 F.R.D. at 250). As detailed below, Mr. Palmigiano satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as Lead Plaintiff for the Action.

### 1.    Mr. Palmigiano's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when the movant's claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re MicroStrategy*, 110 F. Supp. 2d. at 435. Mr. Palmigiano's claims and those of all other class members arise "out of the same course of events" as the other proposed class members and are based on the same legal theory. *Id.*; *see also Bousso*, 2024 WL 4873311 at *5.

The claims asserted by Mr. Palmigiano are based on the same legal theory and arise out of the same course of events as the other purported Class members' claims. Mr. Palmigiano purchased shares of AeroVironment common stock, as did each member of the proposed Class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. Thus, Mr. Palmigiano satisfies the typicality requirement of Rule 23(a).

### 2.    Mr. Palmigiano Will Fairly and Adequately Represent the Class's Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). As the party with the largest financial interest, Mr. Palmigiano is presumptively the "most adequate plaintiff." *In re MicroStrategy,* 110 F. Supp. 2d. at 433. "[A] person may be an adequate representative of the class where that person (i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *Id.* at 435-36. Here, Mr. Palmigiano's interests are aligned with the members of the proposed Class, and there is no evidence of any conflict between Mr. Palmigiano's interests and those of the Class. As detailed above, Mr. Palmigiano's claims raise similar questions of law and fact as claims of the members of the Class, and Mr. Palmigiano's claims are typical of the members of the Class.

13

Further, Mr. Palmigiano has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Reilly Decl., Exs. C and F. Having suffered substantial losses, Mr. Palmigiano will be a zealous advocate on behalf of the Class.

Finally, Mr. Palmigiano has selected Kaplan Fox—counsel highly experienced in prosecuting securities class actions—to represent him. *See* Reilly Decl., Ex. E. Thus, the close alignment of interests between Mr. Palmigiano and other Class members, and Mr. Palmigiano's zeal to prosecute the Action on behalf of the Class, provide ample reason to grant Mr. Palmigiano's motion for appointment as Lead Plaintiff in the Action. Accordingly, Mr. Palmigiano satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

### 3.  This Court Should Approve Mr. Palmigiano's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Grad*, 2022 WL 2789899, at *7; *Rice*, 2017 WL 3699859, at *13. Mr. Palmigiano has retained Kaplan Fox to file moving papers on his behalf seeking appointment as Lead Plaintiff and to serve as Lead Counsel to pursue this litigation on behalf of itself and the Class. Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Reilly Decl., Ex. E. Thus, the Court may be assured that, in the event the instant motion is granted, the members of the Class will receive the highest caliber of legal representation available and will be zealously represented.

## IV.  CONCLUSION

For all of the foregoing reasons, Mr. Palmigiano respectfully requests that the Court: (1) appoint Mr. Palmigiano as Lead Plaintiff; (2) approve Mr. Palmigiano's selection of Kaplan Fox as Lead Counsel; (3) approve The Office of Craig C. Reilly to serve as Liaison Counsel; and (4) grant such other relief as the Court may deem just and proper.

14

Dated: July 27, 2026

Respectfully submitted,

/s/ Craig C. Reilly

Craig C. Reilly Esq.
VSB # 20942
**The Office of Craig C. Reilly, Esq.**
429 N. St. Asaph Street
Alexandria, VA 22314
T: (703) 549-5354
F: (703) 549-5355
craig.reilly@ccreillylaw.com
www.ccreillylaw.com

*Attorney for Movant Raffaele Palmigiano and
Proposed Liaison Counsel for the Class*

Jeffrey P. Campisi (*pro hac vice* forthcoming)
Matthew Lindenmuth (*pro hac vice* forthcoming)
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, New York 10022
T: (212) 687-1980
F: (212) 687-7714
jcampisi@kaplanfox.com
mlindenmuth@kaplanfox.com

*Attorneys for Movant Raffaele Palmigiano and
Proposed Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I, Craig C. Reilly, hereby certify that, on July 27, 2026, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

Dated: July 27, 2026                          */s/ Craig C. Reilly*
                                              Craig C. Reilly

16